## Bradshaw, et al. v. Hurt.

(Decided February 27, 1923.)

## Appeal from Allen Circuit Court.

1.  Mines and Minerals—Lease Held to Make Completion of Dry Well Discharge of Future Rentals.—The provision of an oil lease that the completion of one well shall operate as a full liquidation under its provisions during the remainder of the term makes the drilling of a well to the strata in which oil and gas are usually found in that locality, even though it proves to be dry, a full discharge of any rental which otherwise would have accrued during the remainder of the term.

2.  Mines and Minerals—Oil Lease Cannot be Canceled for Non-development Where Rentals are Liquidated by Completing One Well. Under the rule that a lessee can refuse to receive payments of rentals in the future and demand development of the property, and have the lease canceled for non-compliance with the demand, the lessee cannot have the lease canceled for failure to develop where all rentals due under the lease had been discharged in accordance with its terms by the drilling of one well, so that the lessor could not refuse to accept rentals.

3.  Mines and Minerals—Drilling Well is Sufficient Consideration for Agreement to Cancel Rentals for Balance of Lease.—The drilling of a well upon the leased premises, even though it proves to be a dry well, is sufficient consideration to support the lessor's promise to accept the completion of the well as liquidation of all rentals thereafter due under the lease.

HARPER & DENTON for appellants.

OLIVER & DIXON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

In February, 1916, appellee Hurt and wife executed an oil and gas lease on their farm of 170 acres for the term of ten years to Elmer Everist, remote assignor of appellants, Sam Bradshaw, etc. The lease contract was long and contained all of the usual provisions generally found in such leases. Among the conditions to be performed by the lessee is one reading:

"To commence a well on said premises within ninety (90) days from the date hereof, or in case of delay beyond, to pay at the rate of twenty-five (25) cents per acre per annum from the time above mentioned for the completion of said well, until a well is completed; and it is agreed that the completion of such well shall be and oper-

ate as a full liquidation under this provision during the remainder of the term of this lease.''

No well was commenced on the premises within ninety (90) days from the date of the lease, but the rentals were paid for a while until the assignee of the lessee drilled a well into the oil bearing formation but found no oil. The appellants then pulled the casing and plugged the hole and moved their drilling apparatus away. On June 28, 1920, appellee Hurt gave to appellee Bradshaw, etc., a written notice that he (lessor) would receive no more rentals upon his lands on account of the oil lease but would require further development within a reasonable time from the giving of said notice; that the said rentals to become due on August 20, 1920, would not be accepted, and demanded that the lessee proceed with development of the lands. No heed was given this notice by appellant Bradshaw, but he tendered his rentals by paying them into the bank designated in the contract, but the lessor had theretofore notified the cashier not to place any such rentals to his credit. On September 6th, which was more than seventy days from the giving of the notice, this action was commenced by appellee Hurt against appellant Bradshaw and his partner, asking a cancellation of the lease on the grounds that the said lease was a cloud upon his title, and further asked to be adjudged the true and lawful owner of all the minerals in the said lease, free from appellant Bradshaw and his partner. In his petition appellee averred that the lease was executed in 1916 and that appellant had drilled only one dry hole on the place and that producing wells were being drilled around the edge of the said farm and the oil and gas would be drawn from the said lands by the wells on contiguous territory; that he had given the lessees notice to proceed with the drilling and that they had failed after the lapse of a reasonable time to do so; that he had refused to accept rents and was entitled to a cancellation of the lease under the well established rule in this jurisdiction by which the lessor of premises for exploration for oil and gas may, after giving reasonable opportunity for the drilling and development of the property, serve the lessee with notice that he will not again receive rentals but will require development within a reasonable time and thus obtain it, or upon its failure have a cancellation of the contract. Appellants Bradshaw, etc., answered and denied that they had forfeited the lease or had failed to pay the rentals and averred they had deposited the rentals

in the bank designated in the lease contract; that they had drilled one well on the premises which was dry; that by the terms of the lease it was agreed that the completion of a well on the premises should operate as a full liquidation under the lease contract for all rentals during the remainder of the term.

The chancellor decreed a cancellation of the lease and enjoined appellant Bradshaw and his partner from thereafter setting up claim to the oil and gas and from entering upon the premises for the purpose of taking and removing the same. From that judgment Bradshaw, etc., appeal to this court.

A proper construction of that part of the lease contract reading: "It is agreed that the completion of such well shall be and operate as a full liquidation under its provisions during the remainder of the term of this lease," will determine the rights of the parties to this litigation and render it unnecessary to consider the other minor questions presented. We held in the case of Stock v. Va.-Ky. Oil Co., post, that a clause in an oil lease contract reading much the same as the one above quoted is enforcible., and the completion of a well on the premises, even though dry, will discharge the lessee from the payment of rentals. We have also held in the case of Kies v. Williams, 190 Ky. 596, that the drilling of a dry hole to the depth at which oil and gas are usually found in a particular oil field will avoid a forfeiture; and in the case of Suggs v. Williams, 191 Ky. 188, we held that a well drilled into the sand, though dry, while sufficient to prevent a forfeiture, would not discharge the lessee from the payment of rentals for the reason that the lessor was entitled either to royalties or to rentals, and if he did not receive one or the other he was entitled to a cancellation of his lease. See also Monarch Oil & Gas Co. v. Hunt, 193 Ky. 315.

Having reached the conclusion in the Stock case, supra, that a lease contract providing that the completion of a well on the premises shall operate as a full liquidation of all rentals during the balance of the term, is valid and enforcible, we think it logically follows that such liquidation of the rentals must be regarded as a payment of the rentals due for the balance of the term, and all such rentals having been paid in advance the lessor is not entitled to a cancellation of the lease under the rule to which we above refer, because the lessor cannot, as he was required to do in those cases, refuse to accept rentals

and insist upon development. We have several times held that before a lessor could have a cancellation of his lease for failure to develop he must not only give notice that he requires such development but that he will not receive further rentals for delay, and must in fact refuse to accept rentals if tendered. All rentals under the present lease having been liquidated by the drilling of the well on the premises into the oil bearing formation pursuant to an agreement in the lease contract, there were no rentals due appellee Hurt and he could not, therefore, refuse to accept same and require development instead. It is shown in the evidence in this case that the well drilled by appellants on appellee's lands cost a large sum of money. This expenditure in drilling the well was a detriment to the lessee and this detriment was a sufficient consideration to support an agreement to cancel all rentals for the balance of the term. No one, we think, would insist that a landowner might not for a sufficiently valuable consideration agree to lease his land for oil and gas to another for a term of ten years without requiring development or the further payment of rentals. If he can do this, as it must be admitted he can, then he may agree with his lessee that if the latter will drill a well on his premises to the oil bearing formation such drilling (which manifestly costs a large sum) shall operate as a full liquidation of all future rentals under the lease. This being true the chancellor erred in decreeing a cancellation of the lease and in enjoining appellants, Bradshaw, etc., from claiming and entering upon the said land.

For the reasons indicated the judgment is reversed for proceedings consistent with this opinion.

Judgment reversed. Whole court sitting and concurring.